**Maria L. CURRY, Plaintiff–Appellant,**

v.

**Louis W. SULLIVAN, Secretary, Defendant–Appellee.**

**No. 89–55385.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 7, 1990.

Memorandum Filed Sept. 6, 1990.

Opinion as Amended on Denial of Rehearing Feb. 4, 1991.

Thomas Garrett Roche, Robert Hoad, San Diego, Cal., for plaintiff-appellant.

Dennis J. Mulshine, Asst. Regional Counsel, Dept. of Health and Human Services, San Francisco, Cal., for defendant-appellee.

Before WALLACE, THOMPSON and O'SCANNLAIN, Circuit Judges.

## ORDER

The memorandum disposition filed on September 6, 1990, 914 F.2d 262, is amended to add Part II B and redesignated an opinion authored by Judge O'Scannlain. The petition for rehearing is otherwise denied.

## OPINION

O'SCANNLAIN, Circuit Judge:

We affirm the district court's order of summary judgment in favor of the Secretary of Health and Human Services.

### I

Appellant Maria Curry underwent corrective single-artery bypass surgery on March 2, 1985. On February 12, 1986, Curry filed applications for disability insurance benefits and supplemental security income benefits. After a hearing, an administrative law judge ("ALJ") issued a six-page decision in which he found that Curry was not disabled. On June 15, 1987, the Appeals Council denied Curry's request for review of the ALJ's decision; this became the final decision of the Secretary.

Curry subsequently filed this action for judicial review of the Secretary's determination that she was not disabled and his attendant denial of disability benefits to her. In January 1989, the district court entered summary judgment in favor of the Secretary.

Curry timely appeals from the district court's judgment; we have jurisdiction under 28 U.S.C. § 1291.

### II

We must determine whether the findings of fact of the Secretary are supported by substantial evidence in the record and whether the Secretary properly applied the law. See Taylor v. Heckler, 765 F.2d 872, 875 (9th Cir.1985); 42 U.S.C. § 405(g) (1988). The harmless-error rule applies. See Booz v. Secretary of Health and Human Servs., 734 F.2d 1378, 1380–81 (9th Cir.1984).

### A

The Secretary determined that Curry was not disabled within the meaning of 42 U.S.C. § 423(d)(1)(A) because she had the residual functional capacity to perform light work. "Light work" entails the ability to lift and carry up to ten pounds frequently and twenty pounds occasionally. 20 C.F.R. § 404.1567(b) (1989). It also requires "a good deal of walking or standing." Id.

A June 1985 assessment by Dr. Hernandez, a physician who was treating Curry, concluded that Curry had had a "benign" recovery from her March 1985 surgery. Dr. Hernandez indicated that "[a]t this point, I do not feel that the patient is totally permanently disabled." Tr. 190. Such an opinion of a treating physician is entitled to substantial weight. See, e.g., Gallant v. Heckler, 753 F.2d 1450, 1454 (9th Cir.1984).

In a July 1985 treadmill test performed by Curry and administered by Dr. Mondragon (Curry's treating physician at the time), Curry was able to perform up to seven METS. This test result is consistent with a "functional class I heart," as that term is defined by the American Heart Association. Such a result contrasts with Curry's pre-surgery test results, which were consistent with only a "functional class III heart."

Tests performed in August 1985 confirmed the presence of a functioning graft bypassing the occluded artery. Curry was subsequently advised by Dr. Mondragon, on a number of occasions, to increase her daily activity. *See, e.g.,* Tr. 33–35, 253.[1]

The ALJ also considered Curry's testimony about her daily activities. Curry indicated that she was able to take care of her personal needs, prepare easy meals, do light housework, and shop for some groceries. An ability to perform such activities may be seen as inconsistent with the presence of a condition which would preclude all work activity. *See Fair v. Bowen,* 885 F.2d 597, 604 (9th Cir.1989).

▮ We conclude that the aforementioned and other evidence in the record was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" that Curry was capable of performing light work. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quotation omitted) (defining substantial evidence).[2]

### B

In a supplemental filing, Curry has directed the court's attention to the intervening decision of the Second Circuit in *New York v. Sullivan,* 906 F.2d 910 (2d Cir. 1990). *New York* involved a class-action challenge to policies used by the Secretary in determining whether "to parcel out disability benefits to applicants claiming to suffer from ischemic heart disease." 906 F.2d at 912. The district judge, "in a carefully reasoned opinion, granted summary judgment [for the claimants] and invalidat-

ed the Secretary's policy of relying exclusively on treadmill exercise test results when evaluating disability claims for cardiovascular disease as contravening the [Social Security] Act," and the Second Circuit affirmed. *Id.* In a passage cited by Curry, the court of appeals noted:

> Evidence presented below established that the treadmill test, while recommended by many medical experts as a good diagnostic tool, results in misdiagnosis of ischemic heart disease on more than one third of the occasions. An individual who does not show signs of heart disease during a treadmill test may still be severely disabled from ischemia. False assessments may occur because treadmill testing does not consider the full range of stresses and exertions that arise at the workplace or in daily living. For example, the test does not account for demands placed on the heart by heat, cold, humidity, pollution, altitude, psychological pressures and physical efforts that are sudden or prolonged.

*Id.* at 914 (citation omitted).

The court pointed out that "[i]n certain circumstances, other widely used procedures, including nuclear tests ... and angiography, are more reliable than the treadmill test in measuring the severity of ischemic heart disease." *Id.* In light of these facts, the court held that the Secretary's "sole reliance on the treadmill test results to the exclusion of other available relevant evidence clearly violates Congress's requirement of particularized treatment and significant input from treating physicians." *Id.* at 916 (citations omitted).

---

**1.** After Curry's March 1985 surgery, no doctor suggested that appellant was disabled.

**2.** Any reliance (and there appears to have been none) by the Secretary on the residual functional capacity assessments performed by Drs. Paul R. Salerno and Jacqueline L. Jacobs was permissible. *See Magallanes v. Bowen,* 881 F.2d 747, 752 (9th Cir.1989) (opinion of a "non-treating, non-examining medical adviser" could properly be relied on where that opinion was "not contradicted by *all other evidence*" in the record" and was "consistent with other evidence") (emphasis in original). We note that Curry did not object to the introduction into the record of these assessments. *See* Tr. 22 (Curry's counsel informed ALJ that "we have no objections to any of the Exhibits"); *see also* Tr. 206–08, 229–31, 240–44, 248 (Exhibits 39, 42, 45, 47)

(residual functional capacity assessments of Drs. Salerno and Jacobs). Counsel for Curry conceded that Curry's objection to any use of these assessments is based only on a notion that the assessments *alone* do not constitute substantial evidence to support the Secretary's determination. Oral Argument (May 7, 1990) ("It's not [that] I'm saying that they can't be considered— what I'm saying is that they can't be considered substantial evidence. I mean, they can be considered and looked at for whatever value they have, but I don't think they rise to the level of substantial evidence...."). We agree with this characterization of the assessments, but determine, for the reasons set forth in the text, that there was other substantial evidence in the record.

We reject Curry's contention that *New York v. Sullivan* represents a change in the law relating to the Secretary's award of disability benefits. The question in this case was originally and remains whether substantial evidence supports the Secretary's decision. *See Taylor*, 765 F.2d at 875. Any change in the law that *New York* might have announced would not be binding upon this court in any event.

We do find the Second Circuit's decision significant, however, as a factual matter. The case is a class action, and throughout its opinion the court refers to the Secretary's administration of the challenged policies in the present tense. *New York* therefore represents a broad indictment of the Secretary's policies in this area—an indictment which would appear to reach beyond the case of the specific litigants that were before that court.

Nonetheless, the record in the present appeal clearly suggests that the Secretary did *not* rely exclusively on the results of a treadmill test in reaching his decision here. The Secretary relied on numerous other sources of evidence including angiography and reports from treating physicians, two sources of evidence which the *New York* court specifically cited as reliable. Thus, if the Second Circuit was factually correct in concluding that it is the Secretary's policy to rely exclusively on treadmill test results in ischemic heart disease cases, then either the present case fell under an exception to that policy, or else the Secretary ignored his usual policy when considering Curry's application. In any event, the *New York* case lends appellant neither legal nor factual support in this case.

### C

We must next consider whether the Secretary committed reversible error in his findings. We conclude that he did not.

The ALJ found that "claimant is a 50 year old woman who obtained a G.E.D."

Tr. 15. Even if this finding was error (for Curry testified that she was 53 years old and was unclear as to whether she had a G.E.D.), the error was harmless. Curry is literate and able to communicate in English, so the finding as to her having a G.E.D. is immaterial. Similarly, whether Curry is 50 or 53 years old, she nonetheless falls into the Social Security category of "closely approaching advanced age." 20 C.F.R. § 404.1563(c) (1989). The harmless-error rule therefore applies. *See Booz*, 734 F.2d at 1380–81.

As to the ALJ's finding that Curry has "no nonexertional limitations" that would prevent her from performing light work, Tr. 15, such finding was not error. Curry contends that "[h]er right eye is almost blind," Appellant's Brief at 20, but there was no medical evidence of any limitations due to eye-sight or evidence that the alleged limitations had existed or would continue to exist for a continuous period of at least twelve months.

In conclusion, we note that this is a close case but, as an appellate court, we are not the factfinder. We must uphold the Secretary's decision because it was supported by substantial evidence.

AFFIRMED.